UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

ANTHONY BONELLI,

                                        Plaintiff,

            -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
PENSION FUND, DEPUTY INSPECTOR ROBERT
SENS-CASTET, SERGEANT RICHARD CONTE,
DETECTIVE YVONNE LEON, SERGEANT FRANCIS
MURNAME, POLICE OFFICER SEAN MAHON,
POLICE PENSION FUND EXECUTIVE DIRECTOR
ANTHONY GARVEY, POLICE PENSION FUND
GENERAL COUNCIL RHONDA CAVAGNARO,
POLICE PENSION FUND CHIEF INFORMATION
OFFICER FOR INFORMATION TECHNOLOGY BILL
DORNEY, POLICE PENSION FUND CHIEF OF STAFF
JIM MCLOUGHLIN, POLICE PENSION FUND
DIRECTOR OF SECURITY KEN PECE, SALVATORE
MONTARULI, BRUCE AFRANE, and SCOTT RUSSO,

                                        Defendants.

------------------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **JAN 2 6 2011** ★

**SUMMONS ISSUED**
BROOKLYN OFFICE

**11 CIV.**

**CV 11 - 0395**

**COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

**MATSUMOTO, J.**

**J. ORENSTEIN, M.J.**

# PRELIMINARY STATEMENT

1.      This is a civil rights action to recover money damages arising out of

defendants' violation of plaintiff's rights as secured by the Civil Rights Act, 42 U.S.C. Sections

1983, 1985, and 1986 and of rights secured by the First, Fourth and Fourteenth Amendments to

the United States Constitution, and the laws of the State of New York. After years of enduring a

hostile work environment created by his co-workers and supervisors at the New York City Police

Pension Fund, plaintiff filed several complaints about his colleagues' conduct. In retaliation,

plaintiff's co-workers and supervisors, many of whom were police officers or retired police

officers, conspired with members of the New York City Police Department and intentionally made false allegations against plaintiff that caused him to be falsely arrested and maliciously prosecuted. Further, plaintiff's co-workers used excessive force against plaintiff and failed to intervene on plaintiff's behalf when force was being used against him in the workplace. Defendants' actions were in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff was deprived of his constitutional and common law rights when the individually named defendants unlawfully confined plaintiff, caused the unjustifiable arrest of plaintiff, caused the unlawful prosecution of plaintiff, used excessive force against plaintiff and failed to intervene on plaintiff's behalf when his constitutional rights were being violated.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1342 (3) and (4) and the aforementioned statutory and constitutional provisions.

3.     The plaintiff Anthony Bonelli further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gave rise to the federally based claims and causes of action.

## VENUE

4.     Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because some of the claims arose in this district.

- 2 -

## PARTIES

5.      Plaintiff Anthony Bonelli is a citizen of the United States and a resident of the County of Nassau, State of New York.

6.      Bruce Afrane, is and was at all times relevant herein an employee, and agent of the New York City Police Pension Fund.

7.      Bruce Afrane is being sued in his individual and official capacities.

8.      General Council Rhonda Cavagnaro is and was at all times relevant herein, General Council, an employee, and agent of the New York City Police Pension Fund.

9.      General Council Rhonda Cavagnaro is being sued in her individual and official capacities.

10.     Sergeant Richard Conte, is and was at all times relevant herein the Integrity Control Officer at the Police Pension Fund, an officer, employee and agent of the New York City Police Department.

11.     Sergeant Richard Conte is being sued in his individual and official capacities.

12.     Deputy Inspector Robert Sens-Castet is and was at all times herein an officer, employee and agent of the New York City Police Department.

13.     Deputy Inspector Robert Sens-Castet is being sued in his individual and official capacities.

14.     Chief Information Officer for Information Technology Bill Dorney is and was at all times relevant herein, Chief Information Officer for Technology, an employee, and agent of the New York City Police Pension Fund.

- 3 -

15.     Chief Information Officer for Information Technology Bill Dorney is being sued in his individual and official capacities.

16.     Executive Director Anthony Garvey is and was at all times relevant herein, Executive Director, an employee, and agent of the New York City Police Pension Fund.

17.     Executive Director Anthony Garvey is being sued in his individual and official capacities.

18.     Detective Yvonne Leon, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

19.     Detective Yvonne Leon, is and was at all times relevant herein assigned to the Major Case Squad.

20.     Detective Yvonne Leon is being sued herein in her individual and official capacity.

21.     Police Officer Sean Mahon, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

22.     Police Officer Sean Mahon is being sued herein in his individual and official capacities.

23.     Chief of Staff Jim Mcloughlin is and was at all times relevant herein, Chief of Staff, an employee, and agent of the New York City Police Pension fund.

24.     Chief of Staff Jim Mcloughlin is being sued in his individual and official capacities.

25.     Salvatore Montaruli is and was at all times relevant herein, an employee and agent of the New York City Police Pension Fund.

26.     Salvatore Montaruli is being sued in his individual and official capacities.

- 4 -

27. Sergeant Francis Murname, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

28. Sergeant Francis Murname, is and was at all times relevant herein assigned to the Major Case Squad.

29. Sergeant Francis Murname is being sued herein in his individual and official capacity.

30. Police Pension Fund Director of Security Ken Pece is and was at all times relevant herein Police Pension Fund Director of Security, an employee and agent of the New York City Police Pensions Fund.

31. Police Pension Fund Director of Security Ken Pece is being sued in his individual and official capacities.

32. Scott Russo is and was at all times relevant herein an employee, and agent of the New York City Police Pension Fund.

33. Scott Russo is being sued in his individual and official capacities.

34. The New York City Police Pension Fund is an agency of the City of New York that, pursuant to the Administrative Code of the City of New York, has the powers and privileges of a corporation.

35. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the New York City Police Department and the New York City Police Pension Fund, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the New York City Police Department and the New York City Police Pension Fund at all times

- 5 -

relevant herein, with the power and authority vested in them as officers, agents and employees of the New York City Police Department and the New York City Police Pension Fund and incidental to the lawful pursuit of their duties as officers, employees and agents of the New York City Police Department, the New York City Police Pension Fund and the City of New York.

36.     Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. The defendant City of New York is also authorized by law to maintain a Police Pension Fund. The defendant City of New York assumes the risks incidental to the maintenance of a police force and a police pension fund and the employment of police officers and other employees as said risks attach to the public consumers of the services provided by the New York City Police Department and the Police Pension Fund.

## STATEMENT OF FACTS

37.     In 2005, plaintiff Anthony Bonelli was employed by the City of New York as the Director of Network Services at the New York City Police Pension Fund and was responsible for supervising several employees.

38.     Beginning in 2005, fellow employees and supervisors at the Police Pension Fund began harassing, assaulting, and intimidating plaintiff.

39.     Plaintiff filed complaints against the individuals, who created the hostile work environment, but the supervisors failed to respond to the complaints because the supervisors were friends with the employees involved in the misconduct.

- 6 -

40. Most of the employees at the New York City Police Pension Fund were either retired New York City police officers or current New York City Police Officers and protected each other against any complaints made against them.

41. Furthermore, prior to working at and/or being assigned to the New York City Police Pension Fund, many of the employees at the police pension fund were long time friends and worked together as New York City Police Officers at the 122nd Precinct on Staten Island.

42. Additionally, defendants Conte and Pece were long-time friends and they worked together as police officers assigned to the Housing Bureau many years before they began working at the New York City Police Pension Fund.

43. Moreover, defendant Deputy Inspector Robert Sens-Castet is the brother in-law of defendant Bill Dorney.

44. Plaintiff Anthony Bonelli was never employed as a New York City Police Officer, nor was he related to any of his co-workers.

45. In retaliation for the complaints made by plaintiff against several New York City Police Pension Fund employees, defendants conspired with each other to create false allegations against plaintiff, which would ultimately cause plaintiff to be falsely arrested, maliciously prosecuted, and suspended and then terminated from his job.

46. The harassment, assaults, and threats from fellow employees began in 2005.

47. In November or December of 2005, without provocation, New York City Police Pension Fund employee, defendant Ken Pece, a retired police officer, punched plaintiff in his shoulder.

- 7 -

48.     The November or December 2005 assault on plaintiff was reported to Chief Information Officer for Information Technology Bill Dorney, plaintiff's supervisor, but Dorney did not investigate plaintiff's complaint.

49.     In the summer of 2006, without provocation, Ken Pece punched plaintiff again in the arm. As a result of the punch, plaintiff was unable to exercise, bench press or curl, for over a week.

50.     The summer 2006 assault was reported to Chief Information Officer for Information Technology Bill Dorney, plaintiff's supervisor, but once again Mr. Dorney did not even investigate plaintiff's complaint.

51.     On or about September 24, 2007, without provocation defendant Ken Pece punched plaintiff Anthony Bonelli in his right arm, injuring his arm to the extent that plaintiff could not even open the door with it.

52.     Prior to the September 24, 2007 punch, Ken Pece asked plaintiff if he would like "eating Caryn's ass" and then stated, "well if she was a guy you would."

53.     Anthony Bonelli reported the September 24, 2007 incident to Bill Dorney, but again defendant Dorney did not investigate plaintiff's complaint.

54.     Thereafter, Ken Pece approached plaintiff and advised plaintiff that if plaintiff told the police about the assault, defendant Pece would have plaintiff fired.

55.     On or about December 19, 2007 defendant Ken Pece punched plaintiff in the arm and called him a "faggot."

56.     The incident on December 19, 2007 was reported to Bill Dorney, but defendant Dorney did not investigate plaintiff's complaint.

57.     In January 2008, Ken Pece and Bill Dorney were viewing explicit photos of a woman while plaintiff was present in Bill Dorney's office. Ken Pece asked Bill Dorney if they should show the photos to plaintiff, and Bill Dorney answered in the negative and stated that plaintiff was into men.

58.     On or about February 5, 2008, without provocation, defendant Ken Pece punched plaintiff in the right leg causing plaintiff pain in his leg.

59.     The incident on February 5, 2008 was reported to Bill Dorney, but defendant Dorney did not investigate plaintiff's complaint.

60.     On or about February 8, 2008, without provocation, defendant Ken Pece, choked plaintiff and hit him in the throat causing plaintiff to suffer a bloody lip and a sore throat.

61.     Defendant Bill Dorney witnessed the February 8, 2008 assault on plaintiff and laughed as Ken Pece assaulted plaintiff.

62.     On or about March 28, 2008, without provocation, defendant Ken Pece punched plaintiff in the stomach, violently shoved plaintiff in the chest, verbally harassed plaintiff as he walked away, pushed plaintiff in the lower back, punched plaintiff in the upper back, and challenged plaintiff to a fist fight.

63.     Throughout the assault on March 28, 2008, defendant Ken Pece used homophobic language, calling plaintiff a "cock sucker" and stated plaintiff was "on thin ice."

64.     Plaintiff reported the March 28, 2008 assault to defendant Jim Mcloughlin, Bill Dorney's supervisor, but no action was taken with respect to the complaint.

65.     Defendant Richard Conte also used homophobic language directed at plaintiff and was present when defendant Ken Pece punched plaintiff and verbally harassed plaintiff on March 28, 2008 and did nothing to intervene on plaintiff's behalf.

66. Instead of intervening on plaintiff's behalf, defendant ICO Richard Conte cursed at plaintiff during the March 28, 2008 incident.

67. Upon learning that plaintiff filed a complaint with defendant Jim Mcloughlin, defendant Bill Dorney summoned plaintiff to his office, and threatened plaintiff that he was watching plaintiff and that plaintiff better not violate any rules.

68. In June 2008, defendant New York City Police Sergeant Richard Conte ordered Salvatore Montaruli to cut plaintiff's necktie because, Conte thought it was too "gay."

69. Defendant Salvatore Montaruli complied with defendant Conte's orders and cut plaintiff's necktie with scissors.

70. Since the assaults and attacks on plaintiff were increasing in frequency and nothing was being done at the Police Pension Fund to stop the assaults, plaintiff decided to report the assaults and harassment to defendant Executive Director Anthony Garvey and to the New York City Police Department.

71. On July 1, 2008 plaintiff verbally reported the assaults by Ken Pence to defendant Executive Director Anthony Garvey.

72. Further, plaintiff verbally advised defendant Executive Director Anthony Garvey that he reported the assaults to Bill Dorney and Jim McLaughlin, but both had ignored plaintiff's complaints.

73. Additionally, plaintiff advised defendant Executive Director Anthony Garvey of the assaults by Richard Conte and that he ordered another individual to cut plaintiff's necktie.

- 10 -

74.    On July 3, 2008, plaintiff filed his complaints with defendant Executive Director Anthony Garvey in writing and provided defendant Executive Director Anthony Garvey videotapes of the assaults that occurred.

75.    On July 8, 2008, plaintiff reported the assaults to Detective William Wasson at the New York City Police Department's 1st Precinct.

76.    On July 9, 2008, plaintiff went to the 1st Precinct in person and filed an official complaint report alleging defendant Ken Pece assaulted him.

77.    On July 10, 2008, plaintiff met with Detective Nicholas Reina, who viewed videotapes of the assaults and advised plaintiff that he was going to arrest defendant Ken Pece the following day.

78.    On July 11, 2008, at approximately 10:30 a.m., Detective Reina and Police Officer Francisco went to the 25th Floor of the Police Pension Fund and asked for defendant Bill Dorney.

79.    However, defendant Jim Mcloughlin met with the officers instead of defendant Bill Dorney.

80.    Ken Pece can be seen on videotape eavesdropping on the conversation between the police officers and defendant Jim Mcloughlin at defendant Jim McLaughlin's office door.

81.    The police officers met with Jim Mcloughlin for approximately twenty (20) minutes and then they left the building.

82.    Later that day, plaintiff called Detective Reina about how the meeting went, and Detective Reina advised plaintiff that he was told by defendant Retired Police Captain

- 11 -

Jim McLaughlin that they could not arrest Ken Pece because he was out of the office on official business.

83.    Defendant Jim McLaughlin lied to the police officers about the whereabouts of Ken Pece in order to prevent Ken Pece from being arrested and to obstruct the police officers from performing their police duties in arresting Ken Pece.

84.    The Detectives advised plaintiff that Ken Pece would be arrested for third degree assault and they would return to the Police Pension Fund to arrest him.

85.    On the same day, July 11, 2008, plaintiff was called into Jim McLaughlin's office, where defendant Executive Director Anthony Garvey told plaintiff they were aware plaintiff filed a complaint against defendant Pece with the police.

86.    Executive Director Anthony Garvey, Jim Mcloughlin, Ken Pece, Bill Dorney, and Sergeant Conte were clearly annoyed that plaintiff reported the incidents to the New York City Police Department.

87.    Thereafter, defendants Executive Director Anthony Garvey, Jim Mcloughlin, Ken Pece, Bill Dorney, and Sergeant Conte, along with each of the individually named Police Pension Fund defendants, conspired with each other and members of the New York City Police Department to have plaintiff framed, falsely arrested, maliciously prosecuted and fired from his job.

88.    Defendants Executive Director Anthony Garvey, Jim McLaughlin, Ken Pece, Bill Dorney, General Council Rhonda Casanare, Deputy Inspector Sens-Castet and Sergeant Conte, along with each of the individually named Police Pension Fund defendants had conversations wherein there was a meeting of the minds and they agreed to have plaintiff framed, falsely arrested, maliciously prosecuted and fired from his job.

89. The actions taken by defendants Executive Director Anthony Garvey, Jim McLaughlin, Ken Pece, Bill Dorney, General Council Rhonda Casanare, Deputy Inspector Sens-Castet and Sergeant Conte, along with each of the individually named Police Pension Fund defendants' thereafter were consistent with their agreement to have plaintiff framed, falsely arrested, maliciously prosecuted and fired from his job.

90. On July 17, 2008 plaintiff received a telephone call from Detective Reina, wherein Detective Reina advised plaintiff that he could not arrest defendant Pece because of pressure he was receiving from his supervisors.

91. Some or all of the individually named defendants who were current or former New York City Police Officers and employed at the New York City Police Pension Fund contacted the New York City Police Department and intervened to prevent the arrest of their friend, defendant Ken Pece.

92. On July 17, 2008, plaintiff reported the situation to Commissioner Raymond Kelly's Office and spoke with Detective Annode.

93. On July 17, 2008, plaintiff also brought the video recordings of the assaults to the Manhattan District Attorney's Office and met with Assistant District Attorney Arron Sota, who confirmed that Ken Pece assaulted plaintiff.

94. Plaintiff feared that the NYPD, the employees of the Police Pension Fund, and the retired police officers who worked at the Police Pension Fund were going to retaliate against him for filing a police report against defendant Ken Pece.

95. As such, plaintiff moved all of his personal belongings out of his home in Maspeth New York, where he lived the previous nine years and moved to Long Island.

- 13 -

96.     On August 31, 2008, plaintiff was summoned to an unscheduled meeting with defendant Executive Director Garvey, wherein plaintiff was advised that his job title was going to be changed from Director of Network Services & Telecommunications to Director of Telecommunications, and that he would no longer supervise any staff.

97.     Plaintiff later learned that instead of disciplining Ken Pece for physically assaulting plaintiff, defendants decided to punish plaintiff by changing his job title because he copied and saved the office video recordings of Ken Pece assaulting plaintiff.

98.     On September 25, 2008, defendant Executive Director Anthony Garvey summoned plaintiff to his office to advise plaintiff that defendant General Council Rhonda Cavagnaro had concluded her investigation into plaintiff's assault complaints and recommends that plaintiff be disciplined because he tossed candy.

99.     Defendant General Council Rhonda Cavagnaro's recommendation was an overt act in furtherance of the conspiracy to have plaintiff falsely arrested, maliciously prosecuted and fired from his job.

100.    Moreover, during the time period when defendants disciplined plaintiff, the individual who was caught on videotape assaulting plaintiff, defendant Ken Pece, received a promotion and was given the title Police Pension Fund Director of Security.

101.    On December 12, 2008 plaintiff filed a Notice of Claim with the New York City Office of the Comptroller regarding the incidents of assault and harassment that occurred at the Police Pension Fund.

102.    On December 18, 2008, defendant Bill Dorney, secretly and without notifying plaintiff, deactivated plaintiff's Port Authority Teleport Identification card and his Telehouse Identification card, which gave him access to a facility on Staten Island, called the

Disaster Recovery Site, that plaintiff needed to access to in order to perform his present job duties.

103. Defendant Bill Dorney did not even inform plaintiff's direct supervisor, Bill Johnson, that plaintiff's access cards were deactivated.

104. On February 19, 2009, defendant Bill Dorney emailed defendant Executive Director Anthony Garvey to advise Garvey that Dorney's staff, including plaintiff would be powering down all equipment (computer and telephone) at the end of business the next day, Friday, and the staff would be required to come to work on Saturday to power the equipment back up and test the application functionality before the start of business on Monday.

105. On Saturday, February 21, 2009, plaintiff Anthony Bonelli reported to work at 233 Broadway, New York, New York at approximately 9:00 a.m. to bring the telecommunications system up to test for functionality.

106. Plaintiff completed most of his work, but could not complete the process because the IT employees had not arrived at work.

107. Instead of wasting his morning waiting for the IT employees, plaintiff decided to go to the Disaster Recovery Site located on Staten Island to conduct his first quarterly test on the phone system.

108. As Director of Telecommunications, plaintiff was responsible for going to the Data-Recovery Site on Staten Island to conduct tests on the telephone systems

109. Plaintiff entered the Staten Island Disaster Recovery Site facility, unaware that Bill Dorney had deactivated his ID cards to enter that facility.

110.    Plaintiff successfully performed quarterly tests at the Staten Island facility and then returned to headquarters at 233 Broadway, New York, New York with backup tapes needed to work on an issue they were having regarding corrupt phone call data.

111.    Plaintiff left a voicemail with his supervisor Bill Johnson, advising that he had been at the Disaster Recovery Site on Staten Island.

112.    On February 23, 2009, plaintiff noted on his timesheet that he visited the data recovery site on Saturday to conduct tests on the telephone system.

113.    On February 24, 2009, plaintiff advised Bill Johnson that he was going back to the Disaster Recovery Site, and Bill Johnson advised plaintiff that he should not go because Johnson had just learned that plaintiff was no longer permitted at the Disaster Recovery Site.

114.    Despite knowing that plaintiff was unaware that he was barred from accessing the Staten Island Disaster Recovery Site on February 21, 2009, the individually named defendants falsely reported to the police that plaintiff knowingly entered the Staten Island site without permission and arranged to have plaintiff arrested for and charged with burglary.

115.    On February 27, 2009, defendant Sergeant Richard Conte and defendant Deputy Inspector Robert Sens-Castet knowingly filed a false complaint with the New York City Police Department, wherein they alleged that on February 21, 2009, plaintiff Anthony Bonelli entered the Staten Island Disaster Recovery Site without permission and removed thirteen computer tapes containing personal identification and business records of members of the New York City Police Department.

116.    Defendant Sergeant Richard Conte and each of the other individually named defendants in this case knew that plaintiff's job responsibilities required him to visit the Disaster Recovery Site and knew that plaintiff was unaware that he was not permitted at that site.

117.    Defendant Sergeant Richard Conte had no basis to allege that plaintiff removed thirteen computer tapes containing personal identification and business records for members of the New York City Police Department and defendant Conte knew that his allegations were false.

118.    Thereafter, a search warrant for plaintiff's home and motor vehicle was obtained by Defendant Detective Yvonne Leon using false information provided by Defendant Sergeant Richard Conte and Defendant Deputy Inspector Robert Sens-Castet.

119.    Furthermore, defendant Detective Yvonne Leon obtained the search warrant by misrepresenting a conversation she had with plaintiff, wherein she alleged that plaintiff failed to disclose his visit to Staten Island on Saturday February 21, 2009.

120.    Plaintiff's home was searched and the tapes containing police officers' personal information were not found during the search.

121.    Nevertheless, on February 27, 2009, plaintiff Anthony Bonelli was arrested by defendants Sergeant Francis Murname and Detective Yvonne Leon in front of his co-workers at the Police Pension Fund, located at 233 Broadway in the County and State of New York.

122.    Defendant Sergeant Francis Murname had a conflict of interest in being assigned to the case because he was friends and a former co-worker in the Housing Bureau of the NYPD with Sergeant Richard Conte and Ken Pece, two material witnesses in the case.

123.    Defendants Sergeant Francis Murname and Detective Yvonne Leon had a conversation with the individually named defendants employed at the New York City Police Pension Fund wherein there was a meeting of the minds that they would act in accordance with the conspiracy to have plaintiff arrested and prosecuted even though they knew that there was not probable cause to arrest plaintiff.

124.    Defendants conspired to falsely charge plaintiff with Computer tampering in the First Degree (PL 156.27); Grand Larceny in the Second Degree (PL 155.40(2)); Burglary in the Third Degree (PL 140.20); Commercial Bribery in the Second Degree (PL 180.05); Grand Larceny in the Fourth Degree (PL 155.30(2)); and Computer Trespass (PL 156.10(2)).

125.    Defendant Sergeant Richard Conte falsely reported to the District Attorney's Office that on February 21, 2009 at 10:41 a.m. at 7 Teleport Drive, County of Richmond, State of New York, plaintiff unlawfully entered the premises, stole a computer, computer back up data tapes that contained personal identifying information of police officers, including medical history and medical treatment records of said police officers.

126.    Defendant Sergeant Francis Murname stated that he is aware that plaintiff did not take any sensitive pension data, but he must make the arrest to "cover them all."

127.    On February 27, 2009  at approximately 4:30 p.m., plaintiff arrived at the 122nd Precinct and was placed into a holding cell.

128.    While he was in the holding cell, defendant Detective Francis Murname advised plaintiff in an aggressive and threatening manner, "You're going to get gay sex up the ass tonight."

129.    Eventually, plaintiff was transported to the 120th Precinct.

130.    Plaintiff was held in a cell that reeked of urine and feces.

- 18 -

131. At approximately 2:00 a.m. on February 28, 2009, the officers opened the windows to the jail because some of the prisoners were acting unruly and extremely cold air and wind rushed into the cells making it very uncomfortable for the prisoners.

132. On February 28, 2009, plaintiff was arraigned, bail was set at $2,000,000 and plaintiff was sent to Riker's Island.

133. Plaintiff was transported to Riker's Island and housed at the Otis Bantam Correctional Facility.

134. Plaintiff was terrified by his experiences at Riker's Island.

135. On his first day at Riker's Island, plaintiff witnessed a major commotion that turned into a fight where an inmate was slashed in the throat.

136. Additionally, plaintiff saw treated at the Riker's Island clinic and was informed that he had a low-grade fever of 100 degrees.

137. On the night of March 4, 2009, there were two slashing and one stabbing in the housing area where plaintiff was detained. Plaintiff and his fellow inmates had their cells evacuated and searched.

138. Plaintiff's aunt passed away while he was housed on Riker's Island.

139. On March 6, 2009, a bail hearing was conducted and bail was reduced to the amount of $1,000,000 cash.

140. On March 7, 2009, plaintiff posted bail and he was released from Riker's Island.

141. Upon being picked up at Riker's Island by his brother, plaintiff was notified that his aunt passed away and was being buried that morning.

- 19 -

142.    As a result of the anxiety and depression that the arrest and incarceration caused, plaintiff sought professional help from psychiatrists and social workers.

143.    The individually named defendants each provided false information to the Assistant District Attorney and the Grand Jury to explain why plaintiff was arrested.

144.    Plaintiff Anthony Bonelli was indicted by a grand jury based upon the fabricated and perjured testimony of the individually named defendants.

145.    The presumption of probable cause created by the grand jury indictment is rebuttable in this case because the indictment was based upon perjured testimony and false statements communicated to the grand jury by the individually named defendants.

146.    On September 11, 2009, Assistant District Attorney David Frey advised plaintiff's criminal defense attorneys that the data tapes that defendants had accused plaintiff of stealing from the Police Pension Fund were actually in the possession of the Police Pension Fund the entire time.

147.    The individually named defendants always knew that plaintiff never stole the tapes.

148.    Assistant District Attorney Frey moved to dismiss the felony charges of Computer Tampering, Computer Trespass, and Grand Larceny.  Furthermore, he advised that a fourth charge would be reduced from grand larceny to petit larceny.

149.    On September 14, 2009, plaintiff's bail was reduced from $1,000,000 to $50,000.

150.    On March 5, 2010, the Commercial Bribery charge against plaintiff was dismissed pursuant to a pre-trial motion.

151.    Defendant Detective Leon lied in the police paperwork and under oath on June 10, 2010 at pre-trial hearings about the content of the statement plaintiff made at the time of his arrest.

152.    However, plaintiff's criminal defense attorneys were able to demonstrate to the Court that defendant Detective Leon was lying because unknown to Detective Leon, there was a tape recording of the statements at issue.

153.    On September 28, 2010, the criminal trial against plaintiff commenced.

154.    On October 18, 2010, plaintiff was acquitted of all charges.

155.    Plaintiff spent $162,500 to retain criminal defense attorneys to defend him during the course of the prosecution.

156.    The excessive force, malicious prosecution, false arrest, false imprisonment, negligence, conspiracies, and failure to intervene by the individually named defendants caused plaintiff to sustain physical pain and suffering, lost earnings as well as psychological and emotional trauma.

157.    Notices of claim were served on the Comptroller of the City of New York and at least thirty days have elapsed since the service of such notices and adjustment and/or payment has been neglected and/or refused.

## FIRST CAUSE OF ACTION

### Violation of Plaintiffs' Fourth Amendment and

### Fourteenth Amendment Rights

158. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 157 with the same force and effect as if more fully set forth at length herein.

159. Defendants who were acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned and criminally prosecuted without probable cause in violation of plaintiff's right to be free of an unreasonable seizure under the Fourth Amendment of the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

### Violation of Plaintiffs' Fourth Amendment Rights

160. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 159 with the same force and effect as if more fully set forth at length herein.

161. The use of excessive force by defendant Pece, in punching, hitting and choking plaintiff was an objectively unreasonable physical seizure of plaintiff in violation of his rights under the Fourth Amendment to the United States Constitution.

## THIRD CAUSE OF ACTION

### False Arrest and False Imprisonment

162.  The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 161 with the same force and effect as if more fully set forth at length herein.

163.  The acts and conduct of the defendants constitute false arrest and false imprisonment under the laws of the State of New York and under the Fourth Amendment to the United States Constitution. Defendants intended to confine plaintiff and, in fact, confined plaintiff, and plaintiff was conscious of the confinement. In addition, plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

164.  Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York, the New York City Police Department, and the New York City Police Pension Fund, which are therefore responsible for their conduct.

165.  The City of New York and the New York City Police Pension Fund, as the employers of the defendants, are responsible for their wrongdoing under the doctrine of respondeat superior.

166.  Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

# FOURTH CAUSE OF ACTION

## Malicious Prosecution

167.    The plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 166 with the same force and effect as if more fully set forth at length herein.

168.    The acts and conduct of the defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the United States Constitution.

169.    Defendants commenced and continued a criminal proceeding against plaintiff.

170.    There was actual malice and an absence of probable cause for the criminal proceeding against plaintiff and for each of the charges for which he was prosecuted.

171.    The prosecution and criminal proceedings terminated favorably to plaintiff.

172.    Plaintiff was subjected to a post-arraignment deprivation of liberty sufficient to implicate plaintiff's Fourth Amendment rights.

173.    Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Pension Fund, which are therefore responsible for their conduct.

174.    The City and the New York City Police Pension Fund, as the employers of the defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

175.   Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## FIFTH CAUSE OF ACTION

### Failure to Intervene

176.   The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 175 with the same force and effect as if more fully set forth at length herein.

177.   Defendants had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in the presence of other employees.

178.   Defendants failed to intervene to prevent the unlawful conduct described herein.

179.   As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated and subjected to excessive force, false arrest, malicious prosecution, and other physical constraints.

180.   Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Pension Fund, which are therefore responsible for their conduct.

181.   The City of New York and the New York City Police Pension Fund, as the employer of the police officer defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

182.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## SIXTH CAUSE OF ACTION

### Conspiracy Under Section 42 U.S.C. § 1983

183.    The plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 182 with the same force and effect as if more fully set forth at length herein.

184.    The individually named defendants, under color of federal and state law, acted in concert and conspired with one another to reach an agreement to fabricate and contrive purported misconduct by plaintiff and to deprive plaintiff of his constitutional rights, including the rights to be free from intentional use of unreasonable force; to be free from false arrest, to be free from false imprisonment, and to be free from malicious prosecution. and by fabricating and contriving purported misconduct by plaintiff.

185.    As part of the conspiracy defendants, through the actions of defendants, did, without cause or justification, among other acts, physically assault and batter, abuse, beat, choke, use excessive force, falsely imprison, and maliciously prosecute plaintiff.

## SEVENTH CAUSE OF ACTION

### Conspiracy Under Section 42 U.S.C. § 1985(3)

186.    The plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 185 with the same force and effect as if more fully set forth at length herein.

187.    Plaintiff claims damages individually, under 42 U.S.C. § 1983 and 1985, for his individual injuries set forth above, against the individually named defendants for conspiring with each other to deprive plaintiff of the equal protection of the laws, of equal privileges and immunities under the laws, his Fourth Amendment Rights under the United States Constitution, and conspiring to prevent or hinder the constituted authorities of the State of New York from giving plaintiff the equal protection under the laws.

188.    Each of the individually named defendants acted in furtherance of the conspiracy.

189.    The conspiracy to deprive plaintiff of his rights and privileges by the individually named defendants was caused by a discriminatory animus based upon the individually named defendants' beliefs about plaintiff's sexual orientation.

190.    The conspiracy to deprive plaintiff of his rights and privileges caused plaintiff to be deprived of his Constitutional Rights under the Fourth and Fourteenth Amendments to the United States Constitution when he was unconstitutionally seized, falsely arrested, and maliciously prosecuted.

## EIGHTH CAUSE OF ACTION

## Conspiracy Under Section 42 U.S.C. § 1986

191.    The plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 190 with the same force and effect as if more fully set forth at length herein.

192.    Plaintiff claims damages individually, under 42 U.S.C. §§ 1983, 1985 and 1986, for his individual injuries set forth above, against the individually named defendants for neglecting to prevent or aid in preventing a civil rights conspiracy under 42 U.S.C. § 1985

described supra, of which each of the individually named defendants had knowledge and power to prevent.

## NINTH CAUSE OF ACTION

## Negligent Hiring, Retention, Training and Supervision

193. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 192 with the same force and effect as if more fully set forth at length herein.

194. The City of New York and the New York City Police Pension Fund and their employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise the individually named defendants, individuals who were unfit for the performance of their job duties from the year 2005 through October 18, 2010.

195. Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TENTH CAUSE OF ACTION

## Negligence

196. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 195 with the same force and effect as if more fully set forth at length herein.

197. Defendants owed a duty of care to plaintiff.

198. Defendants breached that duty of care by falsely arresting and maliciously prosecuting plaintiff.

199. As a direct and proximate cause of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

200.    All of the foregoing occurred without any fault or provocation by plaintiff.

201.    The City of New York and the New York City Police Pension Fund, as the employers of the individually named defendants, are responsible for their wrongdoing under the doctrine of respondeat superior.

202.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## ELEVENTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

203.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 202 with the same force and effect as if more fully set forth at length herein.

204.    By the actions described herein, the individually named defendants, each acting individually and in concert with each other, engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which negligently caused severe emotional distress to plaintiff, Anthony Bonelli. The acts and conduct of the defendants were the direct and proximate cause of injuries and damage to plaintiff and violated plaintiff's statutory and common law rights as guaranteed plaintiff by the laws and Constitution of the State of New York.

205.    As a result of the foregoing, plaintiff was deprived of liberty and sustained great emotional injuries.

206.    The City of New York and the New York City Police Pension Fund, as the employers of the individually named defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

207. Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWELFTH CAUSE OF ACTION

## Intentional Infliction of Emotional Distress

208. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 207 with the same force and effect as if more fully set forth at length herein.

209. The above-described conduct of the individually named defendants was outrageous, atrocious so extreme in degree to go beyond all possible bounds of decency, and utterly intolerable in a civilized community.

210. The individually named defendants' conduct was intentional, wanton and reckless and was done with a total disregard of the risks to plaintiff's health and safety.

211. As a direct and proximate result of the acts alleged above, plaintiff suffered severe emotional distress, humiliation, mental anguish, and physical distress.

212. The acts of the individually named defendants alleged above were willful, wanton, flagrant, malicious, oppressive, and performed with a total disregard for plaintiff's health safety and welfare, and justify the award of punitive damages.

## JURY DEMAND

213. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

That the jury find and the Court adjudge and decree that plaintiff shall recover compensatory damages in the sum of $5,000,000 against the individual defendants, the City of New York, and the New York City Police Pension Fund, jointly and severally, together with interest and costs; and punitive damages in the sum of $3,000,000 against the individual defendants, jointly and severally.

a.     That the plaintiff recovers the cost of the suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988.

b.     That the plaintiff has such other and further relief as the Court shall deem just and proper.

Dated:     New York, New York
           January 26, 2011

                                    By:   _David M. H_____

                                          DAVID M. HAZAN
                                          STUART E. JACOBS
                                          JACOBS & HAZAN, LLP
                                          Attorneys for Plaintiffs
                                          22 Cortlandt Street, 16th Floor
                                          New York, NY 10007
                                          (212) 419-0363

- 31 -